POPE MFG. CO. v. H. P. SNYDER MFG. CO. et al.

(Circuit Court, N. D. New York. July 12, 1905.)

No. 6,830.

PATENTS—INVENTION AND INFRINGEMENT—BICYCLES.

The Smith patent, No. 392,973, claims 1 and 6, for an improvement in bicycles, which consists in building the transverse tube for receiving the pedal shaft rigidly into the frame, so as to form an integral part thereof, embody an invention of the patentee, and disclose patentable invention, in view of the prior art. Also *held* infringed.

## In Equity.

Suit in equity to enjoin alleged infringement of claims 1 and 6 of United States letters patent No. 392,973, dated November 13, 1888, and issued to the Smith National Cycle Manufacturing Company as assignee of William E. Smith, the patentee, for bicycle (application filed February 16, 1888), and for an accounting. The suit was originally brought by the American Bicycle Company, but the present complainant, above named, by various assignments, has become the owner of the patent and of all rights of action. Some of the original defendants are out of the litigation, and others have come in, but these changes do not affect the questions now before the court. The defenses urged are: William E. Smith was not the inventor; anticipation by the prior art; the claims in controversy (1 and 6) show no patentable invention, in view of the prior art.

Redding, Kiddle & Greeley (William A. Redding, Edmund Wetmore, and Frederic H. Betts, of counsel), for complainant.

James Harold Warner (Philip C. Dyrenforth, William H. Dyrenforth, and Alfred C. Wilkinson, of counsel), for defendants.

RAY, District Judge. The claims in controversy (1 and 6) read as follows:

"(1) In a rear-driving front-steering bicycle, the frame or reach provided with the rigid transverse tube, c, built rigidly into and forming an integral part of said frame, and adapted, substantially as described, to receive the pedal-shaft."

"(6) In a frame for bicycles and kindred machines, a transverse shaft-receiving tube, c, provided with necks, $c^8$ and $c^9$, to receive the front and rear ends of the frame or reach."

This patent is not for a "bicycle," but for "certain improvements in bicycles." The specifications say:

"The invention consists in various details of construction, hereinafter described, relating more particularly to the main frame, to the several bearings for the shafts, and to means for adjusting the tension of the driving-chain and securing alignment of the wheels."

It relates mainly to the so-called "safety bicycles"—those with two large wheels, one directly in front of the other, and of about the same diameter. The rear wheel is the driving wheel; the front one, the steering wheel. There is a frame or reach connecting the two. The rear end of this reach is supported by the driving wheel, while the forward end is pivotally supported by the steering wheel. This frame or reach has a pedal shaft, which is supported between the two wheels; also a saddle, on which is seated the rider, supported between the two wheels, and, of course, indirectly by the two wheels. This frame or reach has a driving mech-

anism between the pedal shaft and the hub of the driving wheel, and connected therewith, for transmitting the power from the pedals to the driving wheel. An upward extension of the reach or frame supports the saddle, and, of course, the rider, while an upward extension further to the front supports the steering handles and apparatus.

Counting from the rigid transverse tube mentioned in claim 1, adapted to receive the pedal shaft, the frame or reach there referred to has a forward part extending from such transverse tube to the steering head (connected with and supported by the steering wheel), and a rearward part extending from the transverse tube to the hub of the driving wheel and its axle. This rearward part is forked. As I understand the claims, these forward and rearward parts may be constructed as one, integral; but at the point where they join we have the transverse pedal shaft tube, for receiving the pedal shafts, built in rigidly in such a way, anyway, so as to make the whole combination rigid and substantially integral. It would seem permissible in claim 1 to construct the rigid transverse tube for receiving the pedal shaft of one piece, the forward part of the reach or frame of another, and the rearward part thereof of still another; but when completed, they are to be made one whole, integral, by welding or screwing together so as to form a substantial, rigid reach or frame, provided with the rigid transverse tube built therein. In claim 2 we have, not the frame or reach, provided with the transverse tube built into and forming a part thereof, but the "transverse shaft-receiving tube," provided with necks "to receive" the before-mentioned forward and rearward parts of the frame or reach. I do not see how this "transverse shaft-receiving tube" is a part of the reach or frame until the "front and rear ends of the frame or reach" are inserted into it, or until it has received such front and rear ends of the frame or reach. In short, claim 1 is for the frame or reach provided with the rigid transverse tube built rigidly into and forming a part thereof, while claim 2 is for the transverse shaft-receiving tube provided with necks adapted to connect it with the frame or reach, which, until the connection is made, must necessarily be in two parts, the front end and the rear end, spoken of in claim 2 as "the front and rear ends of the frame or reach." In both claims, when the structure is complete, the transverse tube is between the wheels, and at the junction of the front and rear ends, respectively, of the reach or frame, and "built rigidly into and forming an integral part of said frame" or reach, but in such a manner as to be adapted to receive the pedal shaft. The particular manner of building the "transverse tube" into the frame or reach is not specified in claim 1. It is in claim 2. It is evident that both require a construction where the parts are integral, and where the transverse tube for receiving the pedal shaft is not attached to, or built and attached outside of, or made dependent from, or an exterior attachment of, the reach or frame. The idea is to make it integral with the reach or frame; to make it solid with and to have it built into the reach or frame at a certain point, and in such a way as to add

strength to the structure.    It is true, however, that in the specifications of the patent we find this:

"When the frame is made in the particular form herein shown, the bearing-tube, c, will also have two horizontal necks, extending, respectively, forward and rearward, as shown at $c^8$ and $c^9$ in Fig. 14, to enter the front and rear portions of the frame.    When thus constructed, the bearing-tube and its necks serve as a means for uniting the two parts of the main frame or reach.    When, however, the frame is of the usual shape, it may be made continuous from end to end, and the tube applied transversely to its upper or its under side."

This does not limit claims 1 or 6 of the patent.    It is merely a permissible form of construction, a form of construction permitted by other claims of the patent—claim 3, for instance, where it is said, "In a bicycle or kindred machine, the reach having the transverse tube, c, rigidly combined therewith," etc.    The words "rigidly combined" do not necessarily mean "built rigidly into and forming an integral part of said frame," which is the language of claim 1.

The prior art and experience, and even observation alone, afford proof that in a bicycle the frame or reach and the support of the pedal shaft, which sustains, in part, at least, the weight of the rider and the force applied to the pedals, are subjected to great strain. This demands a structure of great strength, but it must not be heavy.    We must provide great strength with the least possible weight.    The location of the pedal shaft support and the manner of its attachment in or to the machine is of prime importance.    The parts must maintain their alignment and proper relations, or there will be excessive wear and friction, and the machine will become useless, or in need of constant repair and replacement of its parts. The necessity of a wholly tubular pedal shaft, the exclusion of dust, etc., has not been lost sight of.    Prior to Smith's patent inventors and users of bicycles had these facts and others of a kindred nature in mind, and attempts were made to overcome these objections and defects.    The art had not reached perfection, nor did it attain perfection when the improvements of the Smith patent came into use, but with his invention it made a vast stride.    The evidence and exhibits in this case are voluminous, and have demanded and received careful study and consideration.    The defense of prior use by James and Stanley, by Robert S. Crawford, and by Alfred J. Gould is not made out to my satisfaction.    There is considerable evidence, but it is not sufficiently convincing to come within the adjudicated cases.

In view of the prior art, to which I have given careful attention, I must find patentable invention.    The experts differ; the evidence conflicts; some of the patents and illustrations in the prior art throw doubt on the question, does not the prior art disclose the same construction shown in claims 1 and 6?    But it is not sufficient to satisfy the mind.    The evidence is too misty and uncertain, and the presumption of validity is not overcome.    The device of Smith, who I find was the inventor, went into general and extensive use, and superseded the older devices.    That defendants infringe is beyond any question whatever.

The complainants are entitled to a decree adjudging the validity of the claims in question, infringement, and for an accounting, with

costs. But care must be taken in preparing the decree not to include any defendant who has arranged a settlement. Let notice of the settlement of the decree be given to all concerned.